IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>    Washington Field Office<br>    131 M Street, N.E., Ste. 4NW02F<br>    Washington, D.C. 20507<br><br>            Plaintiff,<br><br>    v.<br><br>KEY MANAGEMENT PARTNERS, INC.<br>    6301 Ivy Lane, Suite 140<br>    Greenbelt, MD 20770<br><br>            Defendant. | Civil Action No.<br><br>COMPLAINT<br><br>JURY TRIAL DEMAND |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex and retaliation, and to provide appropriate relief to Jocelyn McKenzie ("McKenzie"), who was adversely affected by such practices. As is alleged with greater particularity below, Defendant Key Management Partners, Inc. ("Defendant"), violated Title VII when it subjected McKenzie to sexual harassment and retaliated against her because she opposed Defendant's unlawful employment practices.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3). This action is

1

authorized pursuant to Section 102 of Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Maryland.

## PARTIES

3. Plaintiff, the U.S. Equal Employment Opportunity Commission ("the Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been doing business within the jurisdiction of the United States District Court for the District of Maryland and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously maintained its principal place of business and headquarters in Greenbelt, Maryland.

6. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701 (b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e-(b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, McKenzie, a former employee of Defendant, filed a Charge of Discrimination with the Commission alleging violations of Title VII by Defendant.

8. Defendant received a copy of the Charge and participated in the Commission's investigation, including by communicating with Commission enforcement staff and responding to requests from the Commission for a position statement, information, and documents.

9. On August 19, 2021, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Defendant had violated Title VII by subjecting McKenzie to unwelcome sexual harassment and by retaliating against her because she opposed the sexual harassment and engaged in protected activity.

10. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the unlawful employment practices described in the Letter of Determination.

11. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

12. On September 1, 2021, the Commission issued to Defendant a Notice of Failure of Conciliation.

13. All conditions precedent to the institution of this lawsuit have been fulfilled.

## **FACTS**

14. On or about September 1, 2017, Defendant was awarded a contract with the U.S. Department of Agriculture ("USDA") under which Defendant provided the USDA with contract attorneys to assist in processing Freedom of Information Act ("FOIA") requests.

15. The USDA contract required Defendant to complete, or close, thirty-five to forty-five FOIA requests per month.

16. At all relevant times, Defendant employed four attorneys on its USDA FOIA team (the "FOIA Team"), resulting in an average required closure rate of approximately ten FOIA requests per month per attorney.

17. On or about September 25, 2017, Defendant hired McKenzie to join its FOIA Team.

18. At all relevant times, Kehinde "Kenny" Pedro ("Pedro") was (and remains)

Defendant's owner and CEO.

19. During McKenzie's employment, she worked from home and at the USDA.

20. On or about February 5, 2019, Pedro summoned McKenzie to meet with him at Defendant's headquarters office.

21. While Defendant's Operations Manager Lynnette Baxter ("Baxter") would normally attend meetings with employees, Pedro informed Baxter that she was not needed and excluded her from the meeting with McKenzie.

22. At the meeting, Pedro brought up McKenzie's FOIA request closure rate, which was often high enough to earn a bonus under Defendant's bonus structure.

23. At the end of the meeting, Pedro indicated that he could have had the conversation with McKenzie via telephone, but that he wanted her to come into his office instead.

24. Pedro's insistence on a private meeting, and his conduct during the meeting, made McKenzie uncomfortable. After leaving the meeting, she discussed her concerns with Tamara Scott ("Scott") the Team Lead of the FOIA Team .

25. Later the same day, Pedro called McKenzie on her personal cell phone, stating that he wanted to see her again in person. Since they had just met, it was clear to McKenzie that Pedro was not calling for work-related reasons. McKenzie quickly ended the call and contacted Scott via text to notify her that Pedro's inappropriate conduct was continuing.

26. The next day, on or about February 6, 2019, Pedro called McKenzie on her personal cell phone again, and stated that he wanted to see her.

27. During his February 6, 2019 call to McKenzie, Pedro tried to pressure McKenzie to have an affair with him, stating that, they could "work around" his wife and her boyfriend, and that it would be "okay" to have a romantic relationship because McKenzie did not work with him at

4

Defendant's headquarters office.

28. During Pedro's February 6, 2019 call to her, McKenzie told Pedro that she did not want to be his mistress, and that she wanted to keep things between them strictly professional. McKenzie ended the call by telling Pedro that she needed to get back to work.

29. McKenzie then texted Scott to notify her about Pedro's call and his efforts to pressure her to have an affair with him.

30. On February 7, 2019, McKenzie emailed Pedro, stating:

> "I'm responding to you via email because I prefer that you do not continue to contact me on my personal cell phone. You are my employer, and as I stated before, I enjoy working for your company. However, I expect that you will keep future interactions with me, strictly professional. The disclosures you made during the telephone calls to my cell phone were not invited nor welcome and, frankly, made me uncomfortable. I find it inappropriate, especially considering that I told you that I'm in a relationship and you confirmed that you are married. Thank you for your understanding and for respecting my boundaries."

31. On May 30, 2019, Defendant fired McKenzie based upon Pedro's order.

32. Defendant, and specifically Pedro, falsely asserted that McKenzie's termination was due to poor performance and because the USDA wanted her removed from the contract.

33. In February, March, and April 2019, McKenzie met or exceeded Defendant's closure rate of ten cases per month. McKenzie's performance and closure rate after she rejected Pedro's sexual overtures in February 2019 was the same or better than her performance and closure rate prior to her rejecting his overtures.

34. Defendant opposed McKenzie's application for Maryland unemployment benefits, falsely alleging that she had been terminated for "gross misconduct."

35. At the unemployment hearing, Pedro conceded that the USDA had not requested that McKenzie be removed from its FOIA Team.

36. After the hearing, the Maryland Department of Labor ruled in McKenzie's favor.

37. In August 2019, McKenzie received a job offer as a contractor for the U.S. State Department, contingent on her passing a background check.

38. McKenzie's interim clearance was denied due to Defendant providing an unjustifiably negative reference. This delayed her start date to September 2020, when she received full clearance.

## STATEMENT OF CLAIMS

39. As described above, since at least February 2019, Defendant subjected McKenzie to unlawful employment practices in violation of Sections 703(a) and 704(a) of Title VII, 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a), by subjecting McKenzie to unwelcome sex-based harassment that culminated in her termination; and/or by terminating her employment, unjustifiably opposing her application for unemployment benefits, and unjustifiably providing a negative employment reference in retaliation for her refusing Pedro's sexual advances.

40. As a direct and proximate cause of this violation of her rights under Title VII, McKenzie has suffered damages in the form of past pecuniary losses. In addition, she has suffered emotional distress, pain, suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and loss of enjoyment of life.

41. The unlawful employment practices complained of above were intentional.

42. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of McKenzie.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in, or failing to take prompt, effective corrective action in response to sex-based harassing conduct and other employment practices that discriminate on the basis of sex.

B. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, agents, servants, employees, attorneys, and all persons in active concert or participation with it from retaliating against any individual who engages in protected activity under Title VII, including but not limited to individuals who report instances of sex-based harassment and discrimination or who fail or refuse to acquiesce to such conduct.

C. Order Defendant to institute and carry out training, policies, practices, and programs that provide equal employment opportunities and ensure Defendant's operations are free from sex-based harassment, sex discrimination, and retaliation, including but not limited to: (1) the institution of effective anti-harassment, discrimination, and retaliation policies; (2) the institution of effective complaint procedures; and (3) mandatory training on sex harassment/discrimination and retaliation for all managers and employees.

D. Order Defendant to hire an ombudsman who has experience with Title VII compliance and sexual harassment that will be responsible for receiving, and promptly investigating, any complaints of sex-based harassment, sex discrimination, or retaliation, and for providing prompt and appropriate recommendations to Defendant concerning the proper resolution of such complaints.

E. Order Defendant to sign and conspicuously post, for a designated period of time, a notice to all employees that sets forth the remedial action required by the Court and informs all

employees that Defendant will not discriminate against any employee on the basis of sex and will not condone sex-based harassment, sex discrimination, and/or retaliation and that it will comply with all aspects of Title VII.

      F.     Order Defendant to submit periodic reports to the Commission identifying all complaints or observations of potential sex-based harassment, sex discrimination, and retaliation, and any corrective actions taken in response to those complaints or observations.

      G.     Order Defendant to make McKenzie whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

      H.     Order Defendant to make McKenzie whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of above, including but not limited to any job search expenses and medical expenses, and other pecuniary losses, in amounts to be determined at trial.

      I.     Order Defendant to make McKenzie whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices complained of herein, including emotional pain, suffering, inconvenience, mental anguish, embarrassment, frustration, humiliation, and loss of enjoyment of life, in amounts to be determined at trial.

      J.     Order Defendant to pay McKenzie punitive damages for its malicious and reckless conduct described herein, in amounts to be determined at trial.

      K.     Grant such further relief as the Court deems necessary and proper.

      L.     Award the Commission its costs of this action.

## **JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

Gwendolyn Young Reams
Acting General Counsel
Washington, DC

Debra M. Lawrence
Regional Attorney
EEOC – Philadelphia District Office

/s/ Maria Luisa Morocco
MARIA LUISA MOROCCO
Supervisory Trial Attorney

/s/ Joshua E. Zugerman
JOSHUA E. ZUGERMAN
Trial Attorney
Philadelphia District Office
801 Market Street, Suite 1000
Philadelphia, PA 19107
Phone: (267) 589-9763
Fax: (215) 440-2848
joshua.zugerman@eeoc.gov

DATED: September 29, 2021                                ATTORNEYS FOR PLAINTIFF