IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | * |
| | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| KEY MANAGEMENT PARTNERS, INC., | * |
| | * |
| | * |
| Defendant. | * |
| | *** |

Civil Action No. 8:21-cv-02496-PX

## MEMORANDUM OPINION

Pending before the Court in this sexual harassment case is Plaintiff Equal Employment Opportunity Commission ("the EEOC")'s motion for default judgment. ECF No. 23. Defendant Key Management Partners, Inc. ("Key Management") has not responded to the motion, and the time for doing so has passed. *See* D. Md. Loc. R. 105.2.a. No hearing is necessary. *See* D. Md. Loc. R. 105.6. For the following reasons, the motion for default judgment is GRANTED in part and DENIED in part.

**I.      Background**

In September of 2017, Key Management contracted with the U.S. Department of Agriculture ("USDA") to process Freedom of Information Act ("FOIA") requests for the agency. ECF No. 1 ¶ 14. On September 25, 2017, Key Management hired Jocelyn McKenzie to join its "FOIA Team" for USDA as a contract attorney. *Id.* ¶ 17. In that role, McKenzie was expected to resolve approximately ten FOIA requests per month. *Id.* ¶ 16.

On February 5, 2019, Kehinde Pedro, Key Management's owner and CEO, asked McKenzie to meet in private at the company's headquarters. *Id.* ¶¶ 18, 20-21. In this meeting, Pedro recognized McKenzie's high FOIA request closure rate. *Id.* ¶ 22. He also acknowledged

that they could have talked over the phone, but Pedro suggested to McKenzie that he preferred to meet with her in person.  *Id.* ¶ 23.  Pedro's behavior made McKenzie "uncomfortable," and she immediately discussed her concerns with the FOIA Team Lead, Tamara Scott.  *Id.* ¶ 24.

Later that day, Pedro called McKenzie on her personal cell phone, expressing a desire to see her again in a manner that McKenzie surmised was not work-related.  *Id.* ¶ 25.  McKenzie reported the call to Scott.  *Id.*

The next day, February 6, 2019, Pedro called McKenzie again about seeing her.  *Id.* ¶ 26.  This time, Pedro also tried to convince McKenzie to have sex with him.  *Id.* ¶ 27.  In particular, Pedro discussed how he and McKenzie could "work around" his wife and her boyfriend, and that the affair would not be inappropriate because McKenzie did not work at the Key Management office.  *Id.*  McKenzie told Pedro that she was not interested, ended the call, and notified Scott of Pedro's behavior.  *Id.* ¶¶ 28-29.  On February 7, 2019, McKenzie emailed Pedro, telling him that that his phone calls were "not invited nor welcome and, frankly, made [her] uncomfortable."  *Id.* ¶ 30.  She advised him that going forward, she expected all future interactions between them to stay "strictly professional."  *Id.*  Pedro made no further advances on McKenzie.

A little over three months later, Pedro fired McKenzie.  *Id.* ¶ 31.  He claimed that USDA insisted that she be terminated because of her alleged "poor performance."  *Id.* ¶ 32.  Contrary to Pedro's assertions, McKenzie had received favorable performance evaluations for the previous three months and maintained a consistently high FOIA case closure rate for her nearly two-year tenure with UDSA.  *Id.* ¶ 33.

After she was fired, McKenzie applied for Maryland unemployment benefits.  Key Management opposed the application because she had been terminated for "gross misconduct."  *Id.* ¶ 34.  At an unemployment benefits hearing, however, Pedro conceded that USDA did not

want McKenzie removed from its FOIA team.  *Id.* ¶ 35.  The Maryland Department of Labor granted McKenzie's request for benefits.  *Id.* ¶ 36.

In August of 2019, the Department of State offered McKenzie a position.  However, Key Management provided a negative reference and, as a result, her start date was delayed a year.  *Id.* ¶¶ 37-38.  During this time, McKenzie filed a formal Charge of Discrimination with the EEOC. *Id.* ¶ 7.  On August 19, 2021, after an investigation, the EEOC sent Key Management a "Letter of Determination finding reasonable cause to believe that [it] had violated Title VII by subjecting McKenzie to unwelcome sexual harassment and by retaliating against her[.]"  *Id.* ¶¶ 8-9.  After failed attempts at conciliation, the EEOC filed suit on McKenzie's behalf, alleging that Key Management had sexually harassed and retaliated against McKenzie in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a) & 2000e-3(a) ("Title VII").  ECF No. 1.

Key Management answered the Complaint.  ECF No. 4.  The parties then engaged in protracted discovery, in large measure because Key Management refused to communicate or cooperate with its counsel.  ECF Nos. 12 & 15.  Counsel for Key Management eventually withdrew from the case and, despite plenty of warning that a corporation cannot proceed pro se, Key Management never obtained new counsel or participated in this litigation.  ECF Nos. 14 & 17.  Accordingly, the Clerk entered default against Key Management on January 17, 2023, pursuant to Federal Rule of Civil Procedure 55(a).  ECF No. 21.  On January 19, 2023, the EEOC moved for default judgment against Key Management as to liability.  ECF No. 23.[1]  For

---

[1] The Clerk mailed Key Management a Notice of Default, which put Key Management on notice that it had 30 days to seek vacatur of the entry of default.  ECF No. 22.  The EEOC filed its motion for default judgment during the 30-day period to comply with the Court's dispositive motions deadline, but expressed no opposition to the Court delaying resolution until the 30-day period had expired.  ECF Nos. 16, 19, & 23.  The day before the vacatur deadline, Key Management requested a 90-day extension "to hire and retain legal representation."  ECF No. 24-1. Because no counsel had entered an appearance and because Key Management may not represent itself, *see* D. Md. Loc. R. 101.1.a & 101.2.b, the Court returned the request as deficient.  ECF No. 24.  To date, no counsel has entered an appearance for Key Management or sought other related relief on behalf of the corporation.

the reasons discussed below, the motion is denied as to the harassment claim and granted as to the retaliation claim.

## II.     Standard of Review

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  The Court may enter default judgment at the plaintiff's request and with notice to the defaulting party.  Fed. R. Civ. P. 55(b)(2).  While the Fourth Circuit maintains a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment may be appropriate where a party is unresponsive, *S.E.C. v. Lawbaugh,* 359 F. Supp. 2d 418, 421 (D. Md. 2005).

When considering a motion for default judgment, the Court accepts as true all well-pleaded factual allegations, other than those pertaining to damages.  *See Lawbaugh*, 359 F. Supp. 2d at 422.  To determine whether the allegations are well-pleaded, the Court applies the standards announced in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *See, e.g.*, *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011).  Where a complaint offers only "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement," the Court will not enter default judgment.  *Brophy*, 771 F. Supp. 2d at 545 ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted.").

If the averred facts are sufficient to find liability, the Court next turns to damages.  *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780–81 (4th Cir. 2001).  The kinds of damages available in default are circumscribed by the Complaint.  *See* Fed. R. Civ. P. 54(c).  The

ultimate damages request, whether monetary or equitable relief, must be supported by the record evidence, not simply complaint allegations.  *See Lawbaugh*, 359 F. Supp. 2d at 423 n.2; *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794-95 (D. Md. 2010); *see also CMH Manufacturing v. Neil*, No. JKB-21-0674, 2021 WL 4290634, at \*4 (D. Md. Sept. 21, 2021) (citing *U.S. ex rel. Siemens Indus., Inc. v. Hanover Ins. Co.*, Civ. No. DEM-15-0018, 2015 WL 13734073, at \*2 (E.D. Va. Nov. 18, 2015)).

### III.   Analysis

The EEOC asks for default judgment on both claims.  ECF No. 23.  The Court considers each separately.

#### A.  Sexual Harassment

Title VII prohibits employment discrimination on the basis of sex, including sexual harassment.  42 U.S.C. § 2000e-2(a)(1); *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66-68 (1986).  To prevail on a sexual harassment claim, a plaintiff must establish that she experienced "(1) unwelcome conduct; (2) that is based on the plaintiff's sex; (3) which is sufficiently severe or pervasive to alter the conditions of employment and to create a hostile work environment; and (4) which is imputable to the employer."  *Okoli v. City Of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (internal quotations, citation, and alteration omitted); *see also Pitter v. Cmty. Imaging Partners, Inc*., 735 F. Supp. 2d 379, 393 (D. Md. 2010).

Whether conduct is "severe or pervasive" depends on several factors, "including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (quoting *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 23 (1993)).  The "harassing conduct must be

so extreme as to amount to a change in the terms and conditions of employment." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (quoting *Faragher*, 524 U.S. at 788) (internal quotations and bracket omitted).   Barring extraordinary circumstances, "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" will not suffice.   *Id. See, e.g.*, *Bruce v. Fair Collections & Outsourcing, Inc.*, No. CCB-13-3200, 2014 WL 3052477, at *3 (D. Md. June 30, 2014) (finding that supervisor's repeated touching "was not so extreme as to alter the terms and conditions" of plaintiff's employment where the plaintiff had alleged "just four discrete incidents occurring over an approximately four-month period" ).

When viewing the Complaint facts as true and most favorably to McKenzie, clearly Pedro's conduct had been unwelcomed and based on sex.   Pedro overtly pressed McKenzie to have sex with him, discussed how they could "work around" his wife, and for a brief period, seemed not to take no for an answer.   Additionally, Pedro's position at Key Management clearly makes this conduct attributable to Key Management.   But while Pedro's advances were wholly inappropriate, they were thankfully short-lived.   His offensive behavior occurred during one meeting and two phone calls over two days, where he essentially pressed to have an affair with McKenzie.   When she rightfully complained, the conduct ceased.   No other evidence suggests that McKenzie's work conditions or terms of employment in the months following had been altered on account of Pedro's unwelcome conduct.   ECF No. 1 ¶¶ 20-31.   *See Bruce*, 2014 WL 30524477, at *3; *see also Butts v. Encore Mktg. Int'l*, No. PJM 10-3244, 2012 WL 3257595, at *4 (D. Md. Aug. 7, 2012) (finding no sexual harassment where plaintiff did "not appear to contend that . . . sex-based harassment interfered with his work performance").   Accordingly, because Pedro's conduct was not so severe and pervasive to alter McKenzie's employment conditions, the Court cannot grant default judgment on the harassment claim.

### B.  Retaliation

Title VII also prohibits an employer from retaliating against an employee who engages in conduct protected under Title VII, to include complaining about unwanted sexual advances.  42 U.S.C. § 2000e-3(a); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62-67 (2006).  To prevail, the employee must make a prima facie showing that she engaged activity protected under Title VII and subsequently faced an adverse employment action such that a causal connection exists between the two.  *See Pitter*, 735 F. Supp. 2d at 395; *see also Strothers v. City of Laurel, Md.*, 895 F.3d 317, 327-28 (4th Cir. 2018).  If a plaintiff establishes a prima facie case, the employer must articulate a non-retaliatory reason for the adverse action.  *Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021).  If the employer makes such a showing, the burden shifts back to the employee to demonstrate that the stated reason for the adverse action is pretextual.  *Id*.

When viewing the Complaint facts as true and most favorably to McKenzie, she engaged in protected activity when she complained to Key Management about Pedro's sexual advances.  ECF No. 1 ¶ 30.  *See Tinoco v. Thesis Painting, Inc.*, No. GJH-16-752, 2017 WL 52554, at *8 (D. Md. Jan. 3, 2017).  Key Management next fired McKenzie a few short months later, despite her solid work performance for nearly two years.  ECF No. 1 ¶¶ 31, 33.  *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989) (finding an employee's termination within three and a half months of engaging in a protected activity was sufficient to establish a prima facie case of causation); *Allen v. Rumsfeld*, 273 F. Supp. 2d 695, 708 (D. Md. 2003) (same).  This—combined with Pedro's confessed lie about having fired McKenzie at the behest of USDA, and the total absence of any legitimate ground for her termination—establishes liability.  Default judgment shall issue as to the retaliation claim.

**IV.      Conclusion**

For the foregoing reasons, the EEOC's default motion is granted as to the retaliation claim and denied as to the sexual harassment claim.  On damages, the EEOC must file its brief and evidence in support within 21 days from the date of this Opinion and Order.


July 5, 2023                                                          /S/
Date                                                          Paula Xinis
                                                          United States District Judge