IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 8:21-cv-02496-PX |
| KEY MANAGEMENT PARTNERS, INC., | * * | |
| Defendant. | * * * *** | |

## MEMORANDUM OPINION

Pending before the Court is Plaintiff Equal Employment Opportunity Commission ("EEOC")'s request for damages stemming from the entry of default judgment against Defendant Key Management, Inc. ("Key Management"). *See* ECF Nos. 26 & 33. On August 9, 2023, the EEOC submitted a supplemental memorandum of law and record evidence supporting the requested relief. ECF Nos. 33 & 33-1–10. Key Management failed to respond, and the time for doing so has passed. *See* D. Md. Loc. R. 105.2. For the reasons stated below, the Court GRANTS the motion.

I.  **Background**

The EEOC sued Key Management on behalf of claimant, Jocelyn McKenzie ("McKenzie"), for sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). ECF No. 1. As to damages, the Complaint averred that McKenzie is entitled to back pay, prejudgment interest, compensatory and punitive damages, and injunctive relief. *Id.* at 7–8.

Key Management answered the Complaint, ECF No. 4, but refused to communicate or cooperate with its counsel throughout the discovery process. ECF Nos. 12 & 15. Counsel for Key Management eventually withdrew from the matter, and Key Management never obtained new counsel or cooperated further with the litigation. Accordingly, the Clerk entered default against Key Management on January 17, 2023. ECF No. 21. The EEOC, in turn, moved for default judgment. ECF No. 23.

On July 5, 2023, the Court issued a Memorandum Opinion and Order denying the EEOC's motion for default judgment as to the harassment claim and granting it as to the retaliation claim. ECF Nos. 25 & 26. As to damages, the Court directed the EEOC to submit briefing and documentary evidence in support of its request for relief. ECF No. 25 at 8. The EEOC timely responded. ECF No. 33.

## II.      Standard of Review

Damages stemming from default judgment must be proven by preponderant evidence. *See* Fed. R. Civ. P. 8(b)(6); *Trs. of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, Inc.*, No. DKC-08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."). *See also Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010). The evidence may be submitted by affidavit or other records, or may be proven through live testimony at a hearing. *Id.*; *see Tr. of the Nat. Asbestos Workers Pension Fund. v. Ideal Insulation Inc.*, No. ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011) (collecting cases). The claimed damages "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." *See* Fed. R. Civ. P. 54(c). *See also Educ. Credit Mgmt. Corp. v.*

*Optimum Welding*, 285 F.R.D. 371, 373–74 (D. Md. 2012) (quoting *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001)).

### III. Analysis

As a preliminary matter, the Court finds that each category of requested damages is fairly circumscribed by the Complaint. *See* ECF No. 1. The Court next turns to whether each request is supported by the evidence.

#### A. Lost Wages and Benefits

The EEOC requests $30,123.10 in lost wages, $2,397.53 in overtime, $4,000 in bonuses, $3,054 in paid time off, $3,570.00 in insurance benefits, and $1,463.02 for out-of-pocket penalties and fees. ECF No. 33 at 13–16. The EEOC also requests prejudgment interest on the same. *Id*. Title VII authorizes the requested relief. *See* 42 U.S.C. § 5000e-5(g)(1); *see also Ford v. Rigidply Rafters, Inc.*, 984 F. Supp. 386, 391 (D. Md. 1997). While the Court retains wide discretion in awarding such relief, "[b]ack pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975).

The Court may award back pay for the period between termination and imposition of judgment, to include lost wages, raises, and fringe benefits that the employee would have received absent the discriminatory conduct. *See Long v. Ringling Bros. Barnum & Bailey Combined Shows, Inc.*, 9 F.3d 340, 343 (4th Cir. 1993) ("Under Title VII a prevailing plaintiff is entitled to make whole relief. This may include the value of fringe benefits.") (internal citation and quotes omitted). That said, back pay "should only make the wrongly discharged employee

3

monetarily whole under h[er] employment contract," and not accord the plaintiff a "windfall." *Cline v. Roadway Exp., Inc.*, 689 F.2d 481, 490 (4th Cir. 1982).  Therefore, back pay is properly calculated by totaling the employee's lost wages and benefits, less any amounts earned by the employee's efforts to mitigate her loss through subsequent employment, or wages that could have been earned through the exercise of "reasonable diligence."  *See* 42 U.S.C. § 2000e-5(g)(1).

The Court agrees that McKenzie should be compensated for lost wages and fringe benefits, but arrives at a slightly different calculation than that submitted by the EEOC.  When McKenzie was terminated, she earned an hourly rate of $37.02 and worked a 40-hour work week (excluding overtime hours).  ECF Nos. 33 at 5 & 33-2 ¶ 25.  For more than eight months, McKenzie was unable to secure comparable employment, resulting in lost wages of $48,866.40 less the $19,448.00 earned through interim employment, for a total award of $29,418.40.  ECF Nos. 33 at 13 &. 33-2 ¶¶ 35–44.  The Court finds no error with the remainder of the EEOC's back pay calculations and adopts them.  This includes $2,397.53 in overtime for the eight months; a $500 monthly bonus for meeting case closure quotas for a total of $4,000; 10 hours lost paid time off each month for a total of $3,054.15; $3,570.00 for lost insurance and medical coverage; and $1,463.02 in out-of-pocket costs for late rent payments and associated fees.  ECF No. 33 at 13–16. [1]  Together, McKenzie is entitled to **$43,903.10** in lost wages and benefits.

### B. Prejudgment Interest

The EEOC next requests the Court award prejudgment interest on McKenzie's $43,903.10 in lost wages and benefits.  "The essential rationale for awarding prejudgment interest is to ensure

---

[1] ECF Nos. 33 & 33-2.  *See also* ECF No. 33-1 ¶ 18(b).  *See also Fariss v. Lynchburg Foundry*, 769 F.2d 958, 965–66 (4th Cir. 1985); *Performance Friction Corp. v. N.L.R.B.*, 118 Fed. Appx. 721, 724 (4th Cir. 2004) (representative formulas are reasonable methods to calculate back pay).

that an injured party is fully compensated for its loss." *Feldman's Med. Ctr. Pharm. Inc. v. CareFirst, Inc.*, 823 F. Supp. 2d 307, 324 (D. Md. 2011) (citing *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 195 (1995)). "An award of interest ensures that inflation does not consume the value of a back pay award, and ensures that a discriminating employer does not reap an unfair benefit from 'the inherent delays of litigation.'" *Ford*, 984 F. Supp. at 391 (quoting Koral, *Litigation of Damages in Employment Discrimination Cases,* 522 PLI/Lit. 161, 167-68 (1995)).

Like back pay, whether to award prejudgment interest is a remedy left to the trial court's discretion, as is the applicable interest rate. *See Maksymchuk v. Frank*, 987 F.2d 1072, 1077 (4th Cir. 1993) (citing *United States v. Gregory*, 818 F.2d 1114, 1118 (4th Cir. 1987)); *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1031 (4th Cir. 1993) (en banc); *Hylind v. Xerox Corp.*, 481 Fed. App'x 819, 822 (4th Cir. 2012). The state statutory interest rate may be used to calculate prejudgment interest. *See Quesinberry*, 987 F.2d at 1031 (affirming use of Virginia's statutory interest rate); *Liggett & Myers*, *Inc.*, 690 F.2d at 1074 (affirming use of North Carolina's statutory interest rate). Further, "[c]ommon sense and equities dictate an award of compound interest." *Hylind v. Xerox Corp.*, 749 F. Supp. 2d 340, 351 (D. Md. Sept. 17, 2010) (quoting *Cooper v. Paychex, Inc.*, 960 F. Supp. 966, 975 (E.D. Va. 1997)), *aff'd in part, rev'd in part and remanded*, 481 Fed. Appx. 819 (4th Cir. 2012). Prejudgment interest "generally should be awarded from the date of infringement to the date of judgment." *ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*, 2011 WL 4899922, at *3 (E.D. Va. Oct. 14, 2011) (quoting *Nickson Indus., Inc. v. Rol Mfg. Co., Ltd.*, 847 F.2d 795, 800 (Fed. Cir. 1988).

The Court applies Maryland's 6% interest rate to the award, compounded from the May 30, 2019, termination until the October 21, 2024, judgment. *See* Md. Const. Art. III, § 57; *see also*

5

*Hawkins v. MV Transp., Inc.*, 2017 WL 1327633, at *6 (D. Md. Apr. 10, 2017); *Ford*, 984 F. Supp. at 391 ("An appropriate method to calculate prejudgment interest is to compound the total amount of back pay for the period between Plaintiff's termination…and the date of the jury's verdict."). From this, the Court calculates **$16,234.61** in prejudgment interest.

### C.   Compensatory and Punitive Damages

The EEOC next contends that $50,000 in compensatory damages is warranted to address McKenzie' pain and suffering, mental anguish, and other non-pecuniary losses stemming from the retaliatory termination. *See* ECF No. 33 at 17, n.9. *Homesley v. Freightliner Corp.*, 61 Fed. Appx. 105, 116 (4th Cir. 2003). Title VII caps compensatory damages based on the number of employees working for the defendant at the time of the violative conduct. Because Key Management had at least 15 employees at the time, any compensatory damages award is capped at $50,000. *See* 42 U.S.C. § 2000e-5(e)(3)(B) (incorporating 42 U.S.C. § 1981a(b)(3)(A)).

Although testimony alone may support a compensatory damage award, the testimony "must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated." *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 546 (4th Cir. 2003) (citing *Price v. City of Charlotte*, 93 F.3d 1241, 1251 (4th Cir. 1996)). "Conclusory statements that the plaintiff suffered emotional distress" will not suffice. *Id*. at 547 (quoting *Price*, 93 F.3d at 1254).

The record amply supports the requested compensatory damages award. ECF No. 33-2 ¶ 18(a–b). Key Management's retaliatory conduct triggered McKenzie's "long dormant migraines," which reemerged and intensified in severity and frequency. *Id*. The migraines would last as many as five to seven days per episode. *Id*. At the same time, McKenzie also suffered stress related sleep tremors, hair loss and hives, and she struggled to get out of bed, avoided social interaction, and ate excessively. *Id*. Predictably, McKenzie sought professional

help for a constellation of emotional and somatic symptoms.  *Id.*  From this, the Court concludes that the $50,000 statutory cap properly compensates her for the pain and suffering caused by Key Management's wrongful conduct.[2]

### D. Injunctive Relief

Lastly, the EEOC seeks injunctive relief against Key Management.  ECF No. 33 at 28–29.  "Title VII gives federal courts broad authority to order injunctive relief when 'the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice.'" *Eller v. Prince George's Cty. Pub. Sch's.*, 580 F. Supp. 3d 154, 182 (D. Md. 2022) (citing 42 U.S.C. § 2000e-5(g)).  Injunctive relief is proper where the record does not suggest the discriminatory conduct has ended or where it is likely to recur.  *See Gregory*, 871 F.2d at 1246–47 (4th Cir. 1989).  This is so even where the victim no longer works for the defendant, so long as the requested relief will confer benefits on persons other than the plaintiff.  *See Eller*, 580 F. Supp. 3d at 182; *see also EEOC v. Consol Energy, Inc.*, 151 F. Supp. 3d 699, 711 (N.D.W. Va. 2015).  *Id.*

The EEOC is particularly suited to seek injunctive relief when considering that it "advocate[s] both for the employee's personal interest and for the broader public interest."  *Id.*  The defendant, on the other hand, bears the "heavy" burden of showing that "there is no reasonable expectation that the wrong will be repeated."  *See E.E.O.C. v. LA Weight Loss*, 509 F. Supp. 2d 527, 536 (D. Md. 2007) (quoting *Lyons Partnership, L.P. v. Morris Costumes, Inc.*, F.3d 789, 800 (4th Cir. 2001)).

---

[2] Further, because any combined compensatory and punitive damages award may not exceed the applicable cap, *see Ward v. AutoZoners, LLC*, 958 F.3d 254, 262 (4th Cir. 2020), the Court need not reach the EEOC's request for punitive damages.  *See also E.E.O.C. v. Federal Express Corp.,* 513 F.3d 360, 378 (D. Md. 2008) (aggregated compensatory and punitive damages awards must fall within the statutory cap).

Key Management cannot meet that burden. It evidently does not provide training to employees on anti-discrimination laws, nor does it give its employees any assurance that they will be protected from retaliation if they engage in protected activity under Title VII. ECF No. 33 at 27–28. Furthermore, the primary offender, Mr. Kenny Pedro, is still the CEO of Key Management. These factors, combined with Key Management's refusal to litigate this matter, well supports the propriety of injunctive relief.

As to the specific request, the EEOC asks this Court to enjoin Key Management for five years from retaliating against any employee for engaging in activity protected by Title VII. ECF No. 33 at 28, 30. The EEOC further urges the Court to require that Key Management hire a third-party expert to investigate any future Title VII violations; recommend curative action that Key Management must implement absent good cause shown; and review, implement and disseminate Title VII policies and procedures. *Id.* at 29. Lastly, the EEOC asks the Court to require that Key Management remove from McKenzie's personnel file any mention of performance-based termination, and in the future, respond neutrally to any request for references. *Id.* at 28–29. Given Key Management's past Title VII violations, the EEOC's requested relief is narrowly tailored to help eradicate Key management's discriminatory practices. Accordingly, the Court will grant the requested injunctive relief.

### IV. Conclusion

For the above-stated reasons, the Court finds that McKenzie is entitled to $60,137.71 in back pay and prejudgment interest and $50,000 in compensatory damages for a total of **$110,137.71**. Additionally, the Court awards post-judgment interest at the statutory rate from the date of judgment. *Crump v. U.S. Dep't. of Navy*, 205 F. Supp. 3d 730, 749 (E.D. Va. 2016); 28 U.S.C. § 1961(a) ("Interest *shall* be allowed on any money judgment in a civil case recovered in

a district court.") (emphasis added).  All injunctive relief is also GRANTED.  A separate Order follows.

|  |  |
|---|---|
|    10/24/24    |    /S/    |
| Date | Paula Xinis<br>United States District Judge |